UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| CAROLYN GREEN, ) | CASE NO. 1:24-cv-00453 |
| ) | |
| Plaintiff, ) | JUDGE BRIDGET MEEHAN BRENNAN |
| ) | |
| v. ) | |
| ) | |
| DLJ MORTGAGE CAPITAL, INC., *et al.*, ) | **MEMORANDUM OPINION** |
| ) | **AND ORDER** |
| Defendants. ) | |

Before the Court is the Motion to Compel Arbitration and Stay Proceedings Pending Arbitration filed by Defendants Select Portfolio Servicing Inc. ("SPS"), DLJ Mortgage Capital, Inc. ("DLJ"), and U.S. Bank Trust, N.A. ("U.S. Bank"). (Doc. 41.) Defendants Caliber Home Loans, Inc. ("Caliber") and Fay Servicing, LLC ("Fay") moved to join the Motion. (Docs. 43, 44.) All motions are fully briefed. (Docs. 46, 48, 49.) For the reasons stated herein, the Motions to Join (Docs. 43, 44) and the Motion Compel Arbitration and Stay Proceedings (Doc. 41) are GRANTED.

I.  BACKGROUND

Plaintiff Carolyn Green ("Plaintiff" or "Green") resides at 438 Terrace Drive, Bedford, Ohio ("Property"). (Doc. 16 (Verified First Amended Complaint) at ¶ 19.) In September 2004, Plaintiff obtained a mortgage loan for $114,900.00 from Crevecor Mortgage Inc. ("Crevecor").[1] (Doc. 16-1 at 1830; Doc. 16 at ¶ 226.)[2] From October 17, 2016 to February 10, 2023, U.S. Bank

---

[1] Crevecor is not a party to this action. (Doc. 16 at ¶ 226.)

[2] For ease and consistency, record citations are to the electronically stamped CM/ECF document and PageID# rather than any internal pagination.

owned Plaintiff's Loan. (Doc. 16 at ¶ 10.) In February 2023, U.S. Bank sold the loan to DLJ. (*Id.* at ¶¶ 9, 37.)

> The Loan contains an arbitration provision ("Arbitration Rider"):
>
> ARBITRATION OF DISPUTES. All disputes, claims or controversies arising from or related to the Loan evidenced by the Note (the "Loan"), including statutory claims, shall be resolved by binding arbitration, and not by court action. except as provided under "Exclusions from Arbitration" below. This arbitration agreement is made pursuant to a transaction involving interstate commerce and shall be governed by the Federal Arbitration Act (9 U.S.C. §§ 1-14) . . . All disputes subject to arbitration under this agreement shall be arbitrated individually, and shall not be subject to being joined or combined in any proceeding with any claims of any persons or class of persons other than Borrower or Lender.

(Doc. 41-1 at 3060-61.) The Arbitration Rider also contains a section entitled "exclusion from arbitration":

> This agreement shall not limit the right of Lender to (a) accelerate or require immediate payment in full of the secured indebtedness or exercise other Remedies; described in this Security Instrument before. during. or after any arbitration, including the right to foreclose against or sell the Property; (b) exercise the rights set forth, in the Uniform Covenant labeled "Protection of Lenders' Rights in the Property" contained in this Security Instrument, or (c) exercise of the right under the terms of this Security Instrument to require payment in full of the indebtedness upon the transfer of the Property or a beneficial interest therein . . . .
>
> No provision of this agreement shall limit the right of Borrower to exercise Borrower's rights under the Uniform Covenant labeled "Borrower's Right to Reinstate."

(*Id.* at 3061.) The Arbitration Rider includes a notice:

> By signing this Arbitration Rider you are agreeing to have any dispute arising out to the matters described in the "Arbitration of Disputes" section above decided exclusively by arbitration, and you are giving up any rights you might have to litigate disputes in a court or jury trial. Discovery in arbitration proceedings may be limited by the rules of procedure of the selected arbitration service provider.
>
> This is a voluntary arbitration agreement. If you decline to sign this arbitration agreement, Lender will not refuse to complete the loan transaction because of your decision.

(*Id.* at 3062.)

In March 2020, Plaintiff struggled making payments on the Loan and eventually defaulted. (Doc. 16 at ¶¶ 25-29.) Once her financial situation stabilized, Plaintiff sought to catch up on payments and entered into a modification agreement ("Modification") with Caliber. (*Id.* at ¶¶ 29-30.) Caliber accepted the Modification on February 9, 2021 and executed it on February 19, 2021. (*Id.* at ¶ 33.)

On February 25, 2021, Caliber informed Plaintiff that Fay would take over servicing her Loan starting March 29, 2021. (*Id.* at ¶ 34.) Initially, Fay declined to honor the Modification. (*Id.* at ¶ 35.) Later, in December 2021, Fay implemented the Modification. (*Id.* at ¶ 39.) At this point, Plaintiff missed several mortgage payments and could not pay a $10,000.00 lump sum to bring the Loan current. (*Id.* at ¶ 42.) Plaintiff retained an attorney to resolve issues with her Loan, and sent a series of Requests for Information ("RFIs") and Notices of Error ("NOEs") to her loan service providers. (*Id.* at ¶¶ 43, 44, 51, 55, 68.)

In July 2022, SPS became the Loan's service provider. (*See id.* at ¶ 94.) Plaintiff continued to dispute the Modification with SPS, sending multiple letters, RFIs, and NOEs. (*Id.* at ¶¶ 96-101.) For some of these communications, though not all, SPS provided timely, substantive responses. (*See id.* at ¶¶ 105, 111.)

On September 27, 2022, SPS began a "streamline review" of Plaintiff's account. (*Id.* at ¶ 123.) Following its review, SPS offered Plaintiff two trial modifications, one in October 2022, and another in March 2023. (*Id.* at ¶¶ 128, 177-78.) Plaintiff accepted each trial modification and made trial payments on the assigned dates. (*Id.* at ¶¶ 128, 149-52, 180, 201-03.) Though Plaintiff sent letters, RFIs, and NOEs to confirm that her payments were accepted (*id.* at ¶¶ 133-34, 160, 162, 199), both trial modifications were rejected for failure to make payments. (*Id.* at ¶¶ 153 (discussing denial of October 2022 modification), 197-98 (discussing denial of March 2023

modification).) On May 8, 2023, SPS informed Plaintiff that two of her payments "were received and sent back because the only information on the check was the name 'Carolyn Green'" and SPS could not match the payment to an account. (*Id.* at ¶ 189.)

On August 3, 2023, SPS began returning Plaintiff's trial payments. (*Id.* at ¶¶ 208, 223.) Plaintiff continued to make trial modification payments under the March 2023 agreement and alleges SPS kept all such payments. (*Id.* at ¶¶ 220-21.) On August 22, 2023, DLJ filed a foreclosure complaint against Plaintiff. (*Id.* at ¶ 222.) In their motion, DLJ, SPS, and U.S. Bank state "[t]he parties have recently resolved the foreclosure action and Green's default by entering into a loan modification agreement." (Doc. 41 at 3027.)

On March 11, 2024, Plaintiff filed her initial complaint against Defendants DLJ, SPS, Fay, Caliber, and U.S. Bank. (Doc. 1.) On April 19, 2024, Plaintiff filed an amended complaint alleging violations of the Real Estate Settlement Procedures Act ("RESPA"), fraudulent misrepresentation, negligent fraudulent misrepresentation, negligence, breach of contract, and intentional fraudulent misrepresentation.[3] (Doc. 16.)

## II. LEGAL STANDARD

Under the Federal Arbitration Act, courts considering a motion to compel arbitration engage in a limited, two-step review. *Bratt Enters., Inc. v. Noble Int'l Ltd.*, 338 F.3d 609, 612 (6th Cir. 2003) (citation omitted). In step one, the courts must decide whether there is a valid contract to arbitrate between the parties. *Id.* (citation omitted). For step two, the courts must determine whether the parties' dispute falls within the arbitration agreement's scope before it

---

[3] Counts one through seven are against SPS. (Doc. 16 at 1770-84.) Counts eight through thirteen are against Fay. (*Id.* at 1785-95.) Counts fourteen through seventeen are against Caliber. (*Id.* at 1795-1803.) Counts eighteen through twenty-seven are against DLJ. (*Id.* at 1803-14.) Counts twenty-eight through thirty-six are against U.S. Bank. (*Id.* at 1814-25.)

compels arbitration.  *Id.*

There is a "liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary."  *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp*, 460 U.S. 1, 24 (1983); *see also Glazer v. Lehman Bros.*, 394 F.3d 444, 450 (6th Cir. 2005).  Where, as in the instant action, the arbitration clause is broad, "only an express provision excluding a specific dispute, or 'the most forceful evidence of a purpose to exclude the claim from arbitration,' will remove the dispute from consideration by the arbitrators."  *Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.*, 350 F.3d 568, 577 (6th Cir. 2003) (quoting *AT&T Techs., Inc. v. Comms. Workers of Am.*, 475 U.S. 643, 650 (1986)).

Motions to compel arbitration are treated like motions for summary judgment.  *Great Earth Cos., Inc. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002).  Courts may consider both the pleadings and additional evidence submitted by the parties and view all facts and inferences in the light most favorable to the nonmoving party.  *Id.*  "The burden is on the party opposing arbitration to show that the agreement is not enforceable."  *Townsend v. Stand Up Mgmt.*, No. 18-cv-2884, 2019 WL 3729266, at *2, 2019 U.S. Dist. LEXIS 133635, at *6 (N.D Ohio Aug. 8, 2022) (citing *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91-92 (2000)).  To meet this burden, "the party opposing arbitration must show a genuine issue of material fact as to the validity of the agreement to arbitrate."  *Great Earth*, 288 F.3d at 889.

### III.  ANALYSIS

#### A.  Agreement to Arbitrate

Defendants argue the Arbitration Rider "details the arbitration agreement and contains a notice that the agreement is voluntary."  (Doc. 41 at 3030.)  Because a signatory to a contract is

"presumed to know its contents," Green "knowingly and voluntarily agreed to arbitration." (*Id.* (quoting *Sears, Roebuck & Co. v. Lea*, 198 F.2d 1012, 1015 (6th Cir. 1952)).)  Plaintiff argues the Arbitration Rider is not enforceable for several reasons, each of which is addressed below.

1. **The Dodd-Frank Act**

The Dodd-Frank Act took effect on July 21, 2010.  (Doc. 46 at 3083.)  Plaintiff contends § 1639c(e)(3) rendered arbitration clauses in residential mortgages statutorily invalid and unenforceable.  (*Id.* at 3085.)  Though the Loan was originated in 2004, Plaintiff and Caliber entered into a modification in 2018.  (*Id.* at 3082 (citing Doc. 46-1).)  According to Plaintiff, the 2018 modification is a new loan with new consideration and an additional party.  (*Id.* at 3082-84.)  To Plaintiff, because her "entire Complaint is based upon events that took place after the Covid-19 pandemic in 2020," her Loan is subject to § 1639c(e)(3)'s prohibition on mandatory arbitration clauses in residential mortgages.  (*Id.* at 3083.)

In response, Defendants argue Plaintiff "concede[s] that the Note and Loan are not subject to the proscription against arbitration provisions in 15 U.S.C. § 1639c(e)(3) because they were entered into prior to the effective date of the statute."  (Doc. 48 at 3160.)  Defendants highlight case law holding § 1639c(e)(3) does not apply retroactively.  (*Id.* at 3160-61.)

Next, Defendants argue Plaintiff's assertion that the modification is a new contract has "no factual or legal basis."  (*Id.* at 3161.)  First, Plaintiff's argument "ignores the language of the Arbitration Rider itself."  (*Id.*)  Section 4(D) of the modification states the terms of the Loan "remain in full force and effect and are duly valid, binding agreements, enforceable in accordance with their terms."  (*Id.* (citing 46-1 at 3095).)  Second, Plaintiff lacks case law to support her argument that modifying an existing loan creates a new contract with new terms.  (*Id.*

at 3162.) Lastly, because the Arbitration Rider was entered into voluntarily, it is not unfair to enforce its provisions. (*Id.*)

In general, "retroactivity is not favored in the law." *Moses v. Providence Hosp. & Med. Ctrs., Inc.*, 561 F.3d 573, 583 (6th Cir. 2009) (alterations and internal quotations omitted). To determine whether a statute applies retroactively, courts apply a three step, sequential process, described in *Fernandez-Vargas v. Gonzales*, 548. U.S. 30, 37 (2006):

> We first look to whether Congress has expressly prescribed the statute's proper reach, and in the absence of language as helpful as that we try to draw a comparably firm conclusion about the temporal reach specifically intended by applying our normal rules of construction[.] If that effort fails, we ask whether applying the statute to the person objecting would have a retroactive consequence in the disfavored sense of affecting substantive rights, liabilities, or duties [on the basis of] conduct arising before [its] enactment. If the answer is yes, we then apply the presumption against retroactivity by construing the statute as inapplicable to the event or act in question owing to the absen[ce of] a clear indication from Congress that it intended such a result.

*Id.*

First, Plaintiff has not argued the Dodd-Frank Act articulates a clear intent to apply retroactively. Therefore, the Court will proceed to the second step of the sequential analysis. At this step, the Court assess whether the statute is one that "affect[s] contractual or property rights"—in which case retroactivity is not permissible—or one that "confer[s] or oust[s] jurisdiction"—where retroactivity may be applied. *See Landgraf v. USI Film Prods.*, 511 U.S. 244, 271-72 (1994); *see also Weller v. HSBC Mortg. Servs., Inc.*, 971 F.Supp.2d 1702, 1078 (D. Colo. 2013). Because "obligation to arbitrate is a matter of contract," § 1639c(e)(3) affects contractual rights. *Salary Police Emp. Panel v. Tenn. Valley Auth*, 731 F.3d 325, 332 (6th Cir. 1984). Since the Court answers the second question in the affirmative, the Court will apply the presumption against retroactivity and construe the statute as inapplicable to Plaintiff's 2004 Loan. *Fernandez-Vargas*, 548 U.S. at 37.

Next, the Court considers whether the 2018 modification created a new contract subject to § 1639c's prohibition on mandatory arbitration agreements.  In Ohio, "a mortgage is a contract."  *Century Nat'l Bank v. Hines*, 2014-Ohio-3901, 2014 WL 4441365, *2 (Ohio Ct. App. 2014); *see also Hurd v. Robinson*, 11 Ohio St. 232, 234 (Ohio 1860) ("A mortgage is a contract, by which one person conveys property to another as a security for a debt.").  Accordingly, mortgages "must be treated under regular contract law."  *Hines*, 2014 WL 4441365, at *2.

In essence, Plaintiff argues the 2018 modification operated as a novation.  "A contract of novation is created where a previous valid obligation is extinguished by a new valid contract, accomplished by substitution of parties or of the undertaking, with the consent of all parties, and based on valid consideration."  *Fitness Experience, Inc. v. TFC Fitness Equip., Inc.*, 355 F.Supp.2d 877, 891 (N.D. Ohio 2004) (quoting *McGlothin v. Huffman*, 94 Ohio App.3d 240, 244 (Ohio 1994)).  For a novation, "there must be a clear and definite intent on the part of all parties to the original contract that the purpose of the second agreement is to effect a novation; to completely do away with the original contractual obligation."  *Id.* (quoting *Wenner v. Marsh USA, Inc.*, 2002-Ohio-2176, 2002 WL 826021, at *2 (Ohio Ct. App. May 2, 2002)).  Though the knowledge and intent for a novation need not be express, "[a] novation can never be presumed."  *Wenner*, 2002 WL 826021, at *2.  Accordingly, "evidence of a party's knowledge and consent [to a novation] must be clear and definite."  *Fitness Experience*, 355 F.Supp.3d at 891.

Plaintiff has not provided evidence of mutual agreement to a novation among the parties.  On the contrary, the modification itself states the Loan documents "remain in full force and effect" and the modification "does not replace or release any terms" except as specifically listed.  (Doc. 46-1 at 3095.)  Though express intent to enter into a contract of novation is not necessary, the Court cannot imply knowledge and consent to a novation based on these circumstances.

Because the 2018 modification is not a novation, the contract at issue is Plaintiff's 2004 Loan, which pre-dates the Dodd Frank Act's prohibition on mandatory arbitration agreements.

In sum, though the events in Plaintiff's complaint occurred after Dodd Frank, the Court will not retroactively apply the ban on mandatory arbitration clauses to the Arbitration Rider in Plaintiff's 2004 Loan.

### 2. DLJ as a Successor or Assignee

Plaintiff argues Caliber became the Loan's owner after the 2018 modification. (Doc. 46 at 3085.) Therefore, U.S. Bank did not own the Note and could not have assigned the Note to DLJ. (*See id.*) Plaintiff also asserts DJL "does not possess the original note with a valid endorsement to DLJ or a valid in blank endorsement" because the original note has been "lost or otherwise destroyed." (*Id.*)

Defendants counter that Plaintiff misconstrues the 2018 modification. (Doc. 48 at 3162-63.) The language of the modification states the agreement is between Green and Caliber "on behalf of the current owner of [the] loan." (*Id.* (citing Doc. 46-1 at 3092).) Therefore, any subsequent assignments from U.S. Bank to DLJ were valid. (*Id.* at 3163.) That the Note cannot be located is immaterial to DLJ's status as a successor or assignee. (*Id.*) DLJ can enforce the Arbitration Rider "irrespective of the right to enforce the note." (*Id.*)

The record reflects Crevecor assigned the Loan to U.S. Bank in October 2016, and Cuyahoga County recorded the assignment in November 2016. (Doc. 41-1 at ¶ 9; *id.* at 3065 (assignment of mortgage from Crevecor to U.S. Bank dated October 17, 2016).) In February 2023, U.S. Bank assigned the Loan to DLJ, and Cuyahoga County recorded the assignment in March 2023. (*Id.* at ¶ 10; *id.* at 3066 (assignment of mortgage from U.S. Bank to DLJ dated February 10, 2023).) Plaintiff has not introduced evidence these assignments were invalid or

otherwise ineffectual.  Moreover, the plain language of the modification shows Caliber signed *on behalf* of the owner of the Loan, not as the owner of the Loan itself.  (Doc. 46-1 at 3092.)  *See also Hines*, 2014 WL 4441365, at *2 (applying the regular rules of contract interpretation to mortgages).

As for the lost or destroyed Note, under Ohio Law, a party not in possession of an instrument may still enforce that instrument if certain conditions are met.  *See* Ohio R.C. § 1303.38(A) (listing requirements for enforcing a lost or destroyed note).  Once a party meets these conditions, it is "as if the person seeking enforcement had produced the instrument." Ohio R.C. § 1303.38(B).  Though it appears DLJ alleged it met these requirements in the state court proceedings, the Court need not decide whether these conditions are met here.  (*See* Doc. 46-3 at ¶ 2.)  Under Ohio law, a mortgage and a note are separate, enforceable contracts between the parties.  *Fifth Third Bank v. Hopkins*, 894 N.E.2d 65, 69 (Ohio Ct. App. 2008).  The parties agree the Loan is not lost or destroyed, and the Loan, not the Note, contains the Arbitration Rider. Defendants' inability to locate the original Note does not render the Arbitration Rider invalid.

### 3. Waiver

Next, Plaintiff argues DLJ waived its right to arbitration because it litigated a foreclosure action in state court for ten and a half months without raising arbitration as an affirmative defense.  (Doc. 46 at 3086.)  To Plaintiff, DLJ's actions are sufficient to waive arbitration because they are inconsistent with DLJ's right to arbitrate claims relating to the Loan.  (*Id.* at 3086-87 (citing cases).)[4]

---

[4] Plaintiff does not argue either Fay or Caliber waived their right to arbitration.  (*See* Doc. 46 at 3086-87 (addressing DLJ only).)  At most, Plaintiff argues Fay "sent a letter to Carolyn Green which included a threat of litigation[.]" (Doc. 46 at 3086 (citing Doc. 46-6).)

Defendants highlight the Arbitration Rider specifically excludes foreclosure actions. (Doc. 48 at 3163.)  The Supreme Court has made clear parties are free to agree to arbitration *and* exclude certain claims from the scope of the arbitration agreement.  (*Id.* (citing *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989)).)  At this stage, DLJ, SPS, and U.S. Bank have only filed answers, raised arbitration as a defense, and then moved to compel arbitration.  (*Id.*)  Defendants argue the cases Plaintiff cites are inapposite because they are factually different and do not discuss excluding certain claims from an arbitration clause.  (*Id.* at 3163-64.)

The Sixth Circuit considered when a party waives its contractual right to arbitrate by participating in litigation in *Schwebke v. United Wholesale Mortgage LLC*, 96 F.4th 971 (6th Cir. 2024).  Under the current standard, courts ask "whether a party's actions are 'completely inconsistent' with reliance on arbitration."  *Id.* at 974-75 (discussing *Morgan v. Sundance, Inc.*, 596 U.S. 411 (2022) and Sixth Circuit precedent).  In deciding whether a party's actions were "completely inconsistent" with arbitration, the Sixth Circuit considered several factors including (1) how long the party waited before moving to compel arbitration; (2) whether the party raised arbitration as an affirmative defense; (3) whether the party raised other affirmative defenses; (4) whether the party engaged in a discovery conference; (5) whether the party filed a joint discovery plan; and (6) whether the party engaged in discovery.  *Id.* at 975.

Under this standard, DLJ's actions are not completely inconsistent with exercising its right to arbitration.  Other than maintaining a foreclosure action for over ten months and serving initial discovery disclosures in accordance with the Ohio Rules of Civil Procedure, Plaintiff has not pointed to actions by DLJ that are inconsistent with arbitration.  (Doc. 46 at 3086 (citing Doc. 46-5).)  Instead, DLJ included arbitration as an affirmative defense in its answer, (Doc. 34

at 2876) and moved to compel arbitration before the Case Management Conference. (Doc. 41.) DLJ has not attended a discovery conference, filed a joint discovery plan, or otherwise engaged in discovery at this stage. Considering these factors, the Court does not find DLJ intentionally relinquished or abandoned its right to arbitration. *See United States v. Olano*, 507 U.S. 725, 733 (1993) ("Waiver is the intentional relinquishment of a known right.") (citation omitted); *Schwebke*, 96 F.4th at 976 ("[T]he waiver analysis rests on the totality of the circumstances—not any bright line rule.").

Having considered each of Plaintiff's arguments, the Court finds Plaintiff has not carried her burden of showing the Arbitration Rider is not a valid agreement. The Court will continue to step two of its analysis and determine whether this dispute falls within the scope of the agreement.

### B. Scope of the Arbitration Agreement

Plaintiff quotes the exclusion from arbitration clause, which states in part "[n]o provision of this agreement shall limit the right of the Borrower to exercise Borrower's right under the Uniform Covenant labeled 'Borrower's Right to Reinstate.'" (Doc. 46 at 3087.) Because Plaintiff specifically pleaded that Defendants breach of contract denied her the opportunity to reinstate, she cannot be forced to arbitrate those claims. (*Id.* at 3088.) Plaintiff also cites the provision stating "[a]ll disputes subject to arbitration under this agreement shall be arbitrated individually and shall not be subject to being joined or combined in any proceeding with any claims of any persons or class of persons other than Borrower or Lender." (*Id.* at 3088-89.) Therefore, Plaintiff cannot be compelled to combine disputes with loan servicers past and present into "one big arbitration lawsuit." (*Id.* at 3089.)

DLJ, SPS, and U.S. Bank argue the scope of the Arbitration Rider "is broad and indisputably extends to each of Green's claims[.]"  (Doc. 41 at 3030.)  Caliber and Fay assert as previous loan servicers, the claims against them also fall within the Arbitration Rider.  (Doc. 43 at 3075-76; Doc. 44 at 3077.)  First, the Arbitration Rider explicitly encompasses statutory claims like Plaintiff's RESPA claims.  (Doc. 41 at 3031.)  That RESPA was enacted to protect and inform consumers does not bar arbitration where arbitration is "an effective and accessible forum and negates substantively unfair arbitration fees or procedures."  (*Id.* at 3032 (citing cases).)  Second, Defendants disagree that Plaintiff's claims relate to reinstatement because she "already entered into a loan modification that resulted in the reinstatement of the loan and dismissal of the foreclosure action."  (Doc. 48 at 3166.)  Plaintiff also brings multiple claims unrelated to reinstatement like failure to reply to RFIs and NOEs, failure to provide an opportunity to cure, fraudulent misrepresentation, negligence, and breach of various agreements and instruments.  (*Id.* at 3166-67.)

"The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  *Mercury Const. Corp.*, 460 U.S. at 24-25.  At the same time, "arbitration remains a matter of contract, and a party cannot be required to submit to arbitration in any dispute which he has not agreed so to submit."  *AT&T Techs.*, 475 U.S. at 648.  The party "resisting arbitration bears the burden of proving that the claims are issue are unsuitable for arbitration."  *Green Tree Fin Corp.*, 531 U.S. at 91.

The Arbitration Rider applies to "[a]ll disputes, claims or controversies arising from or related to the Loan evidenced by the Note [], including statutory claims."  (Doc. 41-1 at 3060-61.)  The exclusion from arbitration clause excludes disputes relating to the Loan's "Borrower's Right to Reinstate After Acceleration" provision.  (*Id.* at 3061, 3055.)  This provision outlines

Green's right to "have enforcement of this Security Instrument discontinued" if certain conditions are met.  (*Id.* at 3055.)  While Plaintiff's amended complaint references her "loss of opportunity to reinstate the loan" as damages (*see, e.g.*, Doc. 16 at ¶ 85), her claims relate to Defendants' failure to respond to her RFIs requesting a reinstatement quote as required by RESPA.  (*See id.* at 1770-1825.)  These claims do not invoke any violation of her right to reinstatement as provided in the Loan.  Thus, these claims, as well as Plaintiff's claims for fraudulent misrepresentation, negligence, and breach of various agreements and instrument are within the scope of the Arbitration Rider.  By adjudicating Plaintiff's claims through arbitration, Plaintiff is not being compelled to combine her disputes with any other persons or class of persons.  Instead, arbitration will address Plaintiff's claims against the lenders and service providers, both past and present in one streamlined action.

There is a valid arbitration agreement, and the dispute falls within the scope of that agreement.  The Motion to Compel Arbitration is granted.  As for issuing a stay, for the reasons stated in the motion and consistent with Section 3 of the Federal Arbitration Act, this matter is stayed pending arbitration.  *See Arabian Motors Grp. W.L.L. v. Ford Motor Co.*, 19 F.4th 938, 941-42 (6th Cir. 2021).

### IV.   CONCLUSION

For the reasons stated herein, the Motion to Compel Arbitration and Stay Proceedings is GRANTED.  This matter is STAYED pending arbitration.  Fay's pending motion to dismiss (Doc. 19) is DENIED without prejudice.

Plaintiff is hereby ORDERED to file a notice with the Court within thirty (30) days of the arbitration proceeding becoming final stating whether this matter is to proceed in some form or if

dismissal is appropriate. A failure to comply with this deadline may result in dismissal of this action with prejudice for failure to prosecute.

**IT IS SO ORDERED.**

Date: March 27, 2025

_____
BRIDGET MEEHAN BRENNAN
UNITED STATES DISTRICT JUDGE